UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | | |
|---|---|---|
| RANDY RINDAHL, | ) | Civ. 11-4082 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| DENNIS DAUGAARD, Governor, State of South Dakota; | ) ) | |
| TIM REISCH, Sec. of Corrections; | ) | |
| D.WEBER, Warden; | ) | REPORT and RECOMMENDATION |
| DARYL SLYKHUIS, Deputy Warden; | ) | |
| O. SPURRELL, Assc. Warden; | ) | |
| D. YOUNG, Asst. Warden Annex Prison; | ) | |
| T. PONTO, Assc. Warden; | ) | |
| C. VAN VORNE, Senior Major; | ) | |
| MAJOR T. LINNIWEBER, Security Major; | ) | |
| MAJOR BAKER; | ) | |
| CAPTAIN RODOSKY; | ) | |
| K. DITTMONSON, Section Manager; | ) | |
| SECTION MANAGER FANTROY; | ) | |
| SGT. FEDT; | ) | |
| SCO WYNIA; | ) | |
| SGT. WYNIA | ) | |
| SCO DAVIS; | ) | |
| SCO BAHR; | ) | |
| SCO MORLISE; | ) | |
| KAYLA S., coordinator for the South Dakota DOC within the Sioux Falls Prison System; | ) ) ) | |
| SCO PAROLE AGENT McCLOUD; | ) | |
| SECTION MANAGER WOODWARD; | ) | |
| TEACHER ANDERSON, teacher for the South Dakota DOC Annex Prison Law Library; | ) ) ) | |
| PARALEGAL BIDNE, paralegal for the South Dakota DOC within Sioux Falls Prison System; | ) ) ) | |
| LARSON, Correctional Personnel; | ) | |
| G. TAYLOR, Section Manager; | ) | |
| K. TINKER, Administrator Programs Department of Health; and | ) ) | |
| J. SPURRELL, health care manager, | ) | |
| | ) | |
| Defendants. | ) | |

**BACKGROUND**

Plaintiff, Randy Rindahl, is a prisoner at the South Dakota State Penitentiary (SDSP) in Sioux Falls South Dakota. Rindahl has filed this *pro se* lawsuit pursuant to 42 U.S.C. § 1983, alleging various deprivations of his civil rights by the above-named Defendants. Rindahl initially filed the instant lawsuit in the Eastern District of Wisconsin, but Magistrate Judge Nancy Joseph transferred the case to this district because venue was improper in the Eastern District of Wisconsin. *See* Doc. 19. Plaintiff wishes to proceed *in forma pauperis*. His complaint has been referred to the undersigned for "screening" pursuant to 28 U.S.C. § 1915(e) and 1915A.[1] *See* Doc. 31.

---

[1] 28 U.S.C. § 1915(e)(2)(B)(ii) provides:
(2) Notwithstanding any filing fee, or any portion thereof that may have been paid, the court shall dismiss the case at any time if the court determines that –
   (B) the action or appeal–
    (i) is frivolous or malicious;
    (ii) fails to state a claim on which relief may be granted; or
    (iii) seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915A provides in relevant part:
   (a) Screening.–The Court shall review, before docketing, if feasible, or in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
   (b) Grounds for dismissal.–On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
      (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted;
      (2) seeks monetary relief from a defendant who is immune from such relief.

**DISCUSSION**

**1.  Rindahl's Litigation History and Whether He has Sufficiently Alleged "Imminent Danger" for IFP Status**

The Prison Litigation Reform Act provides:

In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it was frivolous, malicious, or fails to state a claim upon which relief may be granted, *unless the prisoner is under imminent danger of serious physical injury.*

28 U.S.C. § 1915(g) (emphasis added).

Rindahl is a frequent litigant in the District of South Dakota. He has been designated as a "three-strike" litigant who is ineligible for *in forma pauperis* status in the absence of a sufficient claim of imminent danger of serious physical harm. Rindahl's previous claims of imminent danger have been deemed inadequate or exaggerated.[2] Rindahl's lawsuits which have been dismissed upon "screening" pursuant to 28 U.S.C. § 1915(d) or §1915(e)(2)(B)(ii)[3] are summarized below:

1.  *Rindahl v. Class*, Civ. 95-4207 (D.S.D.)  Rindahl claimed the DOC failed to adequately enforce its own policies. Judge Jones dismissed the claim as frivolous pursuant to 28 U.S.C. § 1915(d).  **Strike One**.

2.  *Rindahl v. Class*, Civ. 96-4116 (D.S.D.)  Rindahl claimed unacceptable conditions in the SHU (special housing unit). Judge Jones dismissed the claim for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(d).  **Strike Two.**

---

[2]*Rindahl v. Reisch*, Civ. 10-4004 (D.S.D.) (In forma pauperis status initially granted but later revoked based on Rindahl's misrepresentations to the Court; case dismissed for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. §1915(e)); *Rindahl v. Reisch*, 10-4156 (D.S.D.) (In forma pauperis status denied for failure to sufficiently allege imminent danger of serious physical harm).

[3]The former 28 U.S.C.§ 1915(d) became 28 U.S.C. § 1915(e) when the PRLA became effective in 1996. *Atkinson v. Bohn*, 91 F.3d 1127, 1128 (8th Cir. 1996).

3. *Rindahl v. Class,* Civ. 96-4117 (D.S.D.) Rindahl claimed false disciplinary reports were filed against him in retaliation for filing a religious rights lawsuit. Judge Jones dismissed the claim for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(d). **Strike Three.**

4. *Rindahl v. Webber*, Civ. 08-4041 (D.S.D.) Rindahl claimed he was raped by a prison guard in 2003 and that the incident was never properly investigated by prison personnel. Judge Battey initially denied IFP status because Rindahl failed to sufficiently allege imminent danger. Judge Battey eventually allowed Rindahl to proceed IFP, but nevertheless ultimately dismissed the case for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. §1915(e)(2)(B)(ii). **Strike Four.** The Eighth Circuit summarily affirmed Judge Battey's decision.

5. *Rindahl v. Reisch*, Civ. 10-4004 (D.S.D.) Rindahl claimed deliberate indifference to a serious medical need (inattention to prison doctor's recommendation that surgery may be necessary on his cervical spine). Rindahl was initially granted IFP status based on his claims of imminent danger. His IFP status was revoked based upon Rindahl's misrepresentations to the Court about the course of medical care given by prison medical personnel. Rindahl's case was dismissed for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). **Strike Five.** The Eighth Circuit denied IFP status on appeal.

In addition to the above cases which resulted in "strikes" for purposes of the PRLA, the following cases have been dismissed because Rindahl failed to pre-pay the filling fee, and failed to adequately allege imminent danger of serious physical harm (which would have allowed him to proceed in the absence of pre-payment, despite his "three-strike" status) pursuant to 28 U.S.C. § 1915(g):

6. *Rindahl v. Webber*, Civ. 09-4084 (D.S.D.) Rindahl claimed deliberate indifference to a serious medical need. He alleged inadequate recovery time related to a surgical procedure performed in 2007. Judge Piersol denied IFP status because Rindahl failed to sufficiently allege imminent danger of serious physical harm.

7. *Rindahl v. Reisch*, Civ. 09-4085 (D.S.D.) Rindahl claimed Warden Weber and others did not properly follow prison policy in investigating a sexual assault allegedly perpetrated upon Rindahl at some unspecified time in the past. Judge Piersol denied IFP status because Rindahl failed to sufficiently allege imminent danger of serious physical harm. Judge Piersol also noted the claims were duplicative of those which were then pending in Civ. 08-4081.

4

8. *Rindahl v. Reisch*, Civ. 10-4156 (D.S.D.) Rindahl alleged previous sexual assaults which were perpetrated upon him at the SDSP were not appropriately investigated by prison personnel. Judge Schreier noted the Complaint was "nearly illegible" but nevertheless denied IFP status and dismissed the Complaint because Plaintiff failed to sufficiently allege imminent danger of serious physical harm. The Eighth Circuit denied Rindahl's application for IFP status on appeal and dismissed the case for failure to prosecute.

"The Prison Litigation Reform Act of 1996 enacted what is commonly referred to as the 'three strikes' provision, codified at 28 U.S.C. § 1915(g). This statute provides that an inmate who has had three prior actions or appeals dismissed as frivolous, malicious, or for failure to state a claim may not proceed in a civil action *in forma pauperis* 'unless the prisoner is under imminent danger of serious physical injury.' The statute's bar does not preclude the inmate from filing additional actions but does deny him the advantages of proceeding *in forma pauperis*." *Martin v. Shelton*, 319 F.3d 1048, 1050 (8th Cir. 2003). Further, a complaint that makes "no allegation of ongoing danger, other than conclusory assertions that defendants [are] trying to kill [the plaintiff] by forcing him to work in extreme conditions despite his blood pressure condition" is insufficient to invoke the imminent danger exception. *Id.* Instead, specific allegations of ongoing serious physical injury or a pattern of misconduct evidencing the likelihood of imminent serious physical injury are necessary. *Id.*

An otherwise ineligible prisoner may proceed IFP only if he is in imminent danger *"at the time of filing." Ashley v. Dilworth*, 147 F.3d 715, 717 (8th Cir. 1998)(emphasis in original). Furthermore, "verbal threats and name calling usually are not actionable under § 1983." *McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir. 1993). *See also, Smith v. Copeland*, 892 F.Supp.1218, 1230 (E.D.Mo. 1995) (gestures and abusive language alone are not actionable under § 1983); *Ellis v. Meade*, 887 F.Supp. 324, 329 (D. Me. 1995) (threatening language by guards does not generally violate prisoners' constitutional rights). Because verbal threats and abusive language are not actionable under § 1983, they likewise may not form the basis of an imminent danger exception to the "three strike" rule.

It is with these standards in mind that Rindahl's Complaint in this case has been reviewed to determine whether he is eligible for *in forma pauperis* status under the imminent danger exception the "three strike" rule.[4] Because Rindahl is a three strike litigant and this Complaint does not meet the imminent danger exception , this Complaint should be dismissed.

Rindahl's claims in this pending suit arise from incidents he alleges occurred during the time he spent in disciplinary segregation (between 2008 and 2010).  The "FACTS" section of Rindahl's Complaint contains 116 separately numbered paragraphs. Despite their number, however, Rindahl's factual allegations refer to the same handful of alleged incidents: (1) March 2010 when Defendant McCloud allegedly sprayed Rindahl with pepper spray; (2) August 2010 when Defendant Bahr allegedly conducted an improper strip search; and (3) Unknown date when Defendant Morlise allegedly made offensive homosexual remarks and caused Rindahl to fall forward while pulling the back of Rindahl's pants down and (4)  October 2010 when Defendant Davis allegedly made offensive remarks and "grabbed" at Rindahl while escorting him to the shower.

These are the same allegations made in *Rindahl v. Reisch*, Civ. 10-4156.  For the same reasons explained by Judge Schreier in that case, Rindahl has failed to sufficiently allege imminent danger to overcome his three strikes status here.  All of his allegations pertain to past incidents and do not present evidence of ongoing serious physical injury or a pattern of misconduct which evidences the likelihood of imminent serious physical

---

[4]. Many of Rindahl's current allegations are the same ones he has made in previous complaints. These claims  have previously been found insufficient because they cannot  survive the " screening" process or because they do not  sufficiently allege imminent danger of serious physical harm, or both.  For instance, Rindahl claims that in the summer/fall of 2010, prison personnel unnecessarily used pepper spray on him, pushed him and made offensive remarks to him while on his way to the shower, made offensive homosexual remarks to him, and improperly strip searched him.  All of these same claims were made in *Rindahl v. Reisch*, Civ. 10-4156.  Judge Schreier denied IFP status because Rindahl failed to sufficiently allege imminent danger of serious physical harm.  The Eighth Circuit also denied IFP status on appeal.

injury. At most, assuming Rindahl's claims are true, he has shown a pattern of offensive behavior.

Rindahl also alleges that during the time he spent in disciplinary segregation his access to the courts was wrongfully limited.[5] He alleges his access to outside authorities was curtailed, which inhibited his ability to properly report the alleged sexual assault which allegedly occurred in approximately 2003 and was the subject of Rindahl's several previous lawsuits, including *Rindahl v. Webber,* Civ. 08-4041.[6] Again, even assuming Rindahl's access to the law library was limited or that his ability to contact outside authorities was limited during his stay in disciplinary segregation, these are not the types of wrongs which present an imminent danger of serious physical harm as of the date this lawsuit was filed.

Rindahl's allegations are at best conclusory and insufficient as in *Martin*, and fall far short of the specific allegations of ongoing serious physical injury or a pattern of misconduct evidencing the likelihood of imminent serious physical injury which are necessary to qualify for *in forma pauperis* status. On this basis, it is respectfully recommended to the District Court that Rindahl's motion for *in forma pauperis* status be DENIED and his case be dismissed.

## 2.    Rule 11 Sanctions

One final matter must be addressed. During the careful review of Rindahl's papers to determine whether IFP status should be granted, the Court noticed some of the documents filed by Rindahl and certified by him to be true copies appeared to have

---

[5]According to the Court's electronic filing system, Rindahl filed six federal lawsuits between 2008 and 2010.

[6]Paragraph 74 of Rindahl's Complaint, however, explains that on January 11, 2011, a South Dakota DCI Agent interviewed Rindahl about Rindahl's allegation that he had been raped by a prison guard. Rindahl has not provided the Court with a copy of the outcome of the DCI investigation.

been altered or forged. Specifically, Rindahl attached a declaration to his Complaint (Doc. 1-2 Verification of Exhibits) in which he "declared" he obtained copies of the exhibits he attached as "SDSP-8" and "SDSP-Misconduct" and "SDSP-Respiratory" from the South Dakota State Penitentiary West Hall Coordinator who put her notary stamp and signature on his "declaration" to verify the documents.

Among those documents are three pages which purport to be responses to Rindahl's prison grievances.[7] The responses appear to be on DOC stationery and are purportedly signed by or on behalf of Warden Weber. The responses, however, are not in the usual format of the Warden's administrative remedy response,[8] nor is the type font of the printer the same. In fact, the font used is the very same as the font of Rindahl's Complaint. In these purported responses, Warden Weber agreed with Rindahl's assessment that prison personnel engaged in misconduct. In describing the misconduct, Warden Weber used language containing similar grammatical errors and misspelled words as Rindahl did in his Complaint.

A show cause hearing was ordered by the Court and held on Tuesday, August 9, 2011 to determine whether these three documents are genuine. Rindahl filed a written

---

[7]Several documents were received as exhibits during the August 9, 2011 show cause hearing. Rindahl's exhibits were marked as Plaintiff's numbered exhibits. The Defendants' exhibits were marked as Defendants' lettered exhibits. The three documents which were the subject of the show cause were hearing marked as Court Exhibits 1-3. For ease of reference, Rindahl's, the Defendants' and Court exhibits will be referred to as Rindahl Ex, State Ex and Court Ex throughout this Report and Recommendation.

[8]An example of Weber's normal administrative remedy response is found at Doc. 1-13, page 1 of 1. It contains a reference number, reference code, and id number underneath a box which contains the words **ADMINISTRATIVE REMEDY RESPONSE** in bold, small cap letters. Underneath the Warden's signature at the bottom left is a list of people who receive copies of the administrative remedy: administrative remedy file, unit file, investigator, and central records if disciplinary or classification. The three documents at issue here contain none of these usual traits.

8

response to the show cause Order. Rindahl, Warden Weber, Mary Lou Burggraaf, and Joseph Haas testified at the hearing.

> Fed. R. Civ. P. 11 provides in relevant part:
>
> **(b) Representations to the Court.** By presenting to the court a pleading, written motion, or other paper–whether by signing, filing, submitting, or later advocating it–an attorney or unrepresented party certifies that to the best of the person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances:
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing the existing law or establishing new law;
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for investigation or discovery; and
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.
>
> **(c) Sanctions.**
> (1) In general. If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rue or is responsible for the violation. Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee.

This fact dependent legal standard mandated by Rule 11 is an issue for the Court to decide. *Pope v. Federal Express Corp.*, 974 F.2d 982, 984 (8th Cir. 1992). If the Court finds a litigant has manufactured evidence and/or that perjured testimony has been introduced in an effort to enhance the case through fraudulent conduct, dismissal is an appropriate sanction. *Id.* "When a litigant's conduct abuses the judicial process, the Supreme Court has recognized dismissal of a lawsuit to be a remedy within the inherent power of the court." *Id. citing Chambers v. NASCO, Inc.*, 501 U.S. 32, 45, 111 S.Ct. 2123, 2133, 115 L.Ed.3d 27 (1991). The Court also possesses inherent authority

to impose monetary sanctions if it finds a party has abused the judicial process. *Harlan v. Lewis*, 982 F.2d 1255, 1259 (8th Cir. 1993).

Considering the potential severe and punitive nature of Rule 11 sanctions, a clear and convincing burden of proof is appropriate. *Pfizer, Inc. V. Int'l Rectifier Corp.*, 538 F.2d 180, 195 (8th cir. 1976) (a finding of fraud on the court, including fabrication of evidence, "must be supported by clear, unequivocal and convincing evidence.").

Mr. Rindahl's written response to the show cause Order and his testimony at the August 9, 2011 hearing have been considered. Rindahl admits he filed the documents at issue with the Eastern District of Wisconsin. He persists in his claim that they are copies of documents which he obtained from the SDSP, and that the documents originated from Warden Weber's office.

Rindahl theorizes that because Mary Burggraaf notarized his declaration (Doc. 1-2, p. 1 of 1) which indicates in ¶3 "Plaintiff has also abtained (sic) photo copies of Exhibit SDSP-Misconduct an (sic) SDSP-Respiratory from the South Dakota State Penitentiary Coordinator West Hall who has put her notary stamp and signature on this declaration to verify the documents" that Court Ex 1-3 are authentic documents. Rindahl asserts that because Burggraaf notarized his declaration, and because she inspects all outgoing legal mail for contraband, Court Ex 1-3 are authentic, non-contraband items. Rindahl further asserts because the penitentiary considers fabrication of documents to be a major rule infraction ( a "4-26" or "4-36" pursuant to the Inmate Living Guide) that if he fabricated the documents, he would have been disciplined internally by the SDSP for one of those two major rule infractions. That he has not been disciplined for a "4-26" or a "4-36", Rindahl argues, is further evidence that Court Ex 1-3 are genuine documents.

Rindahl's Ex 1 is the offender correspondence policy (policy 1.5.D.3) which he offers in support of his assertions. Rindahl also asserts that responses to prisoner

inquiries or complaints come in many forms; (*see e.g.* Rindahl Ex 2-4) therefore, Rindahl argues, that Court Ex 1-3 do not match the usual administrative remedy response format is not determinative of whether they are authentic.

Mary Burggraaf, the SDSP West Hall Coordinator, testified at the show cause hearing. She assists inmates with various tasks including their legal mail. In that capacity, she inspects the legal mail before it leaves the institution. She inspects legal mail for contraband, but does not read it for content. Burggraaf explained she has contact with Rindahl on "almost a daily basis." She notarizes his legal documents for him. She does not vouch for the truth of the statements in the documents she notarizes, she merely notarizes the inmate's signature.

Burggraaf identified State Ex B-D which are copies of genuine administrative remedy responses. She explained it is common practice for Assistant Warden Slykhuis to sign for Warden Weber if Weber is unavailable.

Warden Douglas Weber testified that one of his duties as Warden of the SDSP is responding to inmate grievances. He identified State Ex A as a standard format administrative remedy response.[9] Warden Weber reviewed Court Ex 1. He testified Court Ex 1 was not generated by him or anyone in his office. Among the reasons why Weber knows it was not generated by his office are: it is the wrong font, his office does not use all capital letters, the font does not match the signature line, and the grammar and spelling errors would not have originated from his office. He would never have signed Court Ex 1. It appears to be his signature, but he did not sign the document.

---

[9]Weber acknowledged he does communicate with inmates in other formats, but the administrative remedy response has a standard format.

11

Weber explained there are copy machines throughout the prison to which inmates have access.[10] It would "absolutely" be possible for an inmate to obtain a copy of the Warden's signature and letterhead to produce a document such as Court Ex 1. Warden Weber reviewed Court Ex 2 and 3. He also denied he or anyone in his office or on his behalf generated Court Ex 2 or 3 for the same reasons explained regarding Court Ex 1. Weber emphatically referred to Court Ex 1-3 as "frauds and fakes."

Weber examined Rindahl's original institutional file while he was on the witness stand. He testified that responses to inmate grievances are always placed in the inmate's file. Weber explained if Court Ex 1-3 had been generated by Weber or anyone in his office, the originals of those documents would be present in Rindahl's inmate file as an administrative remedy response. Weber indicated Court Ex 1-3 are not present in Rindahl's file.

Rindahl's claim that Mary Burggraaf's notary duties and her notary signature on his declaration proves the legitimacy of Court Ex 1-3 is rejected. Ms. Burggraaf testified that her notary signature on Rindahl's declarations is not an indication that she has verified the truth of the statements contained therein. Therefore, Burggraaf's notary signature and stamp on Rindahl's "Declaration of Randy Rindahl Relates Verification of Exhibits Misconduct and Respiratory" (Doc. 1-2, p.1 of 1) does not affect the veracity of the statements the document contains (most notably the third paragraph which indicates the origin of Court Ex 1-3 and that Burggraaf "has put her notary stamp and signature on this declaration to verify the documents.") Even if it is pretended that Mary Burggraaf intended her notary stamp to verify the truth of the words in the respective documents, that fact would not preclude the Court from concluding that Rindahl pulled wool over her eyes.

---

[10]Rindahl denies he has unsupervised or direct access to a copy machine. He testified he keeps someone around him to verify what he does when he obtains copies.

Second, Rindahl's theory that if the documents were forgeries, they would have been detected by Mary Burggraaf as contraband during her inspection of outgoing legal mail pursuant to DOC Policy 1.5.D.3 (Offender Correspondence) and he would have been punished accordingly with a major rule infraction (a "4-26 or 4-36" pursuant to the Inmate Living Guide) is also rejected.  Burggraaf testified she inspects outgoing legal mail for contraband, (pornography, money, diagrams of the prison) but does not read legal mail for content.  Likewise, the policy to which Rindahl refers (DOC Policy 1.5.D.3 Section C, ¶ 2.a.) states, "Unit staff will not read the privileged/legal correspondence but may inspect the contents page-by-page to prevent the introduction of contraband."  In order for Burggraaf to detect Court Ex 1-3 as forged /fraudulent documents, she would have been required to read the documents and make an independent determination that they were forged/fraudulent.  Both her testimony and the provisions of Policy 1.5.D.3 indicate staff merely inspects outgoing legal mail, but does not read the content.  Again, even assuming she did believe the statements were true does not make it so.

I find that Court Ex 1-3 are forged/fraudulent documents and that Rindahl is the person who forged them.  I further find that Mr. Rindahl knowingly made false representations to the Court regarding the three documents in question in violation of Fed. R. Civ. P. 11(b)(1) and (3).   This finding is the result of clear and convincing evidence.  This finding is based upon several observations, including the following:

- Warden Weber testified that if documents of this nature had originated from his office, they would have been in the form of an administrative remedy response.  Administrative remedy responses which originate from the Warden's office comport with a regular format consistent with State Ex A-D.  The documents in question (Court Ex 1-3) do not comport with the regular format.

- The documents in question contain several dissimilarities to documents which were identified by Weber as authentic documents which were generated by his office.  For example, Court Ex 1-3 are typed in all capital letters.  Weber testified documents which originate in his office are not typed in all capital letters.  The font used to type Court Ex 1-3 is different from the font used to type documents which originate from Warden Weber's office.  The font used to type the body of Court Ex 1-3 is different from the font used to type the signature line on those documents.

13

- The documents in question likewise do not contain several characteristics which Warden Weber explained an authentic administrative remedy response would contain, such as a reference number, reference code, and the names of people who received copies.

- The documents in question do not exist in Rindahl's institutional file.

- The documents in question are typed in the same type font as Rindahl's Complaint and the same font as many other of the documents generated and filed by Rindahl in this lawsuit. The documents are also typed using all capital letters, which is also a common characteristic of Rindahl's Complaint and other documents generated and filed by Rindahl.

- The documents in question contain spelling and grammatical errors which are the same or very similar to errors contained in Rindahl's Complaint.

    ***Compare, Complaint*** Doc. 1, p. 18, ¶ 100: (" . . . WHEN PLAINTIFF HAD OFFERED NO ***RESSISTENCE*** BEFORE AN AFTER BEING HANDCUFFED AFTER THE USE OF CHEMICAL AGENT . . .") (emphasis added).

    to

    ***Court Ex 2***: ("AS TO THE MATTER OF THE CONDUCT OF SECTION MANAGER FANTROY AND S.C.O. McCLOUD THIER CONDUCT WHEN USING CHEMICAL AGENT ON RINDAHL, RANDY #24928 –WHEN OFFERING NO FORM OF ***RESSISTENCE*** WAS MISUSE OF THIER POWER AND EXCESSIVE.") (emphasis added).

    ***Compare Complaint***, Doc. 1, p. 14, ¶¶ 81-82 : (" . . .WHEN ESCORTING PLAINTIFF TO THE SHOWER HAD GRABBED AT MY TESTICLES AND ***GRION*** . . .") ("CALLING PLAINTIFF HOMOSEXUAL IN FRONT OF CORRECTIONAL PERSONNEL AND INMATES THEN MAKING SEXUAL ***JESTURES .*** . .") (emphasis added).

    to

    ***Court Ex 1***: ("YOU ALSO STATED THAT HE HAD USED THREATENING SEXUAL ***JUSTURES*** TOWARDS YOU AND GRABBED AT YOUR ***GRION*** AND PERSONAL AREA . . .") (emphasis added).

- Rindahl admitted he filed the documents in question with the Eastern District of Wisconsin.

14

- Rindahl's claim that he obtained the documents (Court Ex 1-3) from SDSP personnel is rejected as not credible.

- Rindahl's claim that he did not manufacture or forge the documents (Court Ex 1-3) is rejected as not credible.

- Warden Weber's testimony that the documents (Court Ex 1-3) were not generated by him or anyone in his office, is accepted as credible.

- Warden Weber's testimony is believed and Rindahl's testimony is not believed based on my observation of both men in open court. Additionally, there is other evidence in the record to corroborate the truth of Weber's testimony. There is an absence of corroborating evidence to support Rindahl's testimony. Indeed, other evidence in the record is inconsistent with Rindahl's testimony. I conclude that Rindahl lied under oath.

Because the content of the documents goes to the heart of Rindahl's claims, these representations were made in an effort to mislead the Court and to enhance Rindahl's case. Fraud upon the Court is an abuse of the judicial process. Dismissal with prejudice is an appropriate Rule 11 sanction. *Pope v. Federal Express Corp.*, 974 F.2d 982, 984 (8th Cir. 1992). For this reason as well, it is respectfully recommended to the District Court that Mr. Rindahl's case be DISMISSED with prejudice.

The Defendants also requested monetary sanctions. This is not the first time Mr. Rindahl has unsuccessfully tried to mislead the Court. His *in forma pauperis* status was revoked in *Rindahl v. Reisch*, Civ. 10-4004 (D.S.D.) after factual misrepresentations in his Complaint were discovered. Rindahl's escalating attempts to mislead the Court are despicable. His manufacturing of fraudulent documents and his lies under oath show disrespect for the American system of justice and are an abuse of the judicial process. Fabrication of evidence has been referred to as "the most egregious misconduct" which justifies a finding of fraud upon the Court. *Pfizer, Inc. v. Int'l Rectifier Corp.*, 538 F.2d 180, 195 (8th Cir. 1976). The imposition of monetary sanctions is well justified in this case, but would be futile because Rindahl is an indigent prisoner with little prospect of ever earning any significant money.

15

Fed. R. Civ. P. 11(c)(4) allows the Court to impose a non-monetary sanction which is designed to deter repetition of the undesirable conduct. The rule provides in relevant part:

> **(4) Nature of a sanction**. A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated. The sanction may include nonmonetary directives; an order to pay a penalty into court; or , if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation.

In light of this provision, it is RECOMMENDED that in addition to dismissal of this lawsuit with prejudice, the District Court impose Rule 11 sanctions upon Mr. Rindahl as described below:

## CONCLUSION and RECOMMENDATION

It is respectfully RECOMMENDED to the District Court that Plaintiff's Complaint be DISMISSED. Rindahl's Complaint should be DISMISSED for two reasons. First, Rindahl is a three strikes litigant who must sufficiently allege imminent danger of serious physical harm in order to regain the privilege of filing *in forma pauperis*. His allegations in this lawsuit are a frivolous, repetitive attempt to restate claims that both Judge Schreier and the Eighth Circuit found insufficient to make such a showing in a previous lawsuit, Civ. 10-4156.

Second, is also RECOMMENDED that this case be DISMISSED WITH PREJUDICE as a Rule 11 sanction. It is further recommended the District Court impose the following directive as a Rule 11 sanction upon Mr. Rindahl: if Mr. Rindahl files any new lawsuit in any state or federal court in the United States, he must file this opinion and the district court's opinion together with his Complaint or any other initial filing. Rindahl must also file this opinion and the district court's opinion in the court files of any currently existing lawsuit in which Rindahl is a party. Rindahl's failure to do so should be considered a fraud upon the court in which the new or current litigation

exists and may be grounds for dismissal, in addition to new and separate Rule 11 sanctions.

It is noted Plaintiff paid the initial partial filing fee of $16.70 while this matter was pending in Wisconsin. Plaintiff, however, shall remain responsible for payment of the remainder of the $350.00 filing fee . *In Re: Tyler*, 110 F.3d 528, 529-30 (8th Cir. 1997) (prisoner will be assessed full filing fee even if his case is dismissed because "the PRLA makes prisoners responsible for their filing fees the moment the prisoner brings a civil action or files an appeal.").

### NOTICE TO PARTIES

The parties have fourteen (14) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require de novo review by the District Court. *Thompson v. Nix*, 897 F.2d 356 (8th Cir. 1990); *Nash v. Black*, 781 F.2d 665 (8th Cir. 1986).

Dated this 11th day of August, 2011

BY THE COURT:

s/John E. Simko

_____

John E. Simko
United States Magistrate Judge